## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD ANGINO and ALICE ANGINO, | : : : | Civil No. 1:15-CV-952 |
| Plaintiffs | : : | |
| v. | : : | (Magistrate Judge Carlson) |
| THE CINCINNATI INSURANCE CO., | : : | |
| Defendant | : | |

## MEMORANDUM OPINION AND ORDER

### I.   Statement of Facts and of the Case

This is a diversity civil action brought by Richard and Alice Angino against the Cincinnati Insurance Company, the plaintiffs' uninsured and under-insured insurance policy carrier, seeking to recover from Cincinnati under this policy as a result of a November 2014 automobile accident in which the Anginos' vehicle was struck and demolished by a car driven by an under-insured motorist.

This case now comes before us on a motion *in limine* filed by the plaintiffs. (Doc. 12.)  This motion *in limine* seeks a declaration as a matter of law prior to trial that the plaintiffs should prevail on one of the principal disputed issues in this case, the question of how to calculate any future lost earnings suffered by Mr. Angino, a

75-year-old personal injury attorney who has enjoyed a lengthy, and successful legal career.  For the reasons set forth below, we conclude that this issue may not be resolved by the Court as a matter of law in advance of trial, but rather should be the subject of competing proof at trial.

The pertinent facts in this case can be simply stated:  The plaintiff, Richard Angino, is an attorney in his 70s, who was the founding partner of his law firm, has been a preeminent personal injury plaintiff's counsel, and is self-described as the moving force behind this law firm for many years.  Given Mr. Angino's description of his prominent and indispensable leadership role in this firm, it appears that the firm, which for the past year has employed only three attorneys and 8 staff, is largely sustained by the industry, energy, efforts, time, talents and reputation of Mr. Angino, who has explained that he:  "was one of 13 Plaintiff attorneys throughout Pennsylvania to be recognized in the First Edition of Best Lawyers in America and perhaps the only one to still be practicing full time." (Doc. 12, ¶13.)

On November 30, 2014, Mr. Angino was the operator and Mrs. Angino a passenger in a motor vehicle which was struck from the rear by an under-insured motorist.  (Id., ¶1.) As a result of this accident, Mr. Angino alleges that he "sustained severe neck, mid and low back injuries, which have required over the past 10 months

medical care, treatment, medical bills, lost earnings, and an impairment of earning capacity, as well as general damages." (Id., ¶3.)

As described in the plaintiff's complaint, this lawsuit largely involves a dispute between the parties regarding how best to evaluate the Anginos' losses that may be recovered under this insurance policy.  In particular, the parties dispute how best to evaluate the potential future lost earnings that Richard Angino can expect to recover as a result of the injuries he suffered in this November 2014 accident.  As to this pivotal issue, relying upon competing tenets of Pennsylvania law, and presenting their own conflicting views of the evidence, the parties have each adopted contrasting methodologies for calculating this element of the insurance claim.

For his part, Mr. Angino's future earnings calculation looks to the past to predict the future.  Specifically, Mr. Angino has "utilized the $750 figure to have an actuary calculate past and future income lost in determining earning capacity based upon his value as an attorney."  (Id., ¶15.)  According to Mr. Angino, this $750 hourly rate is a product of his past legal success, is based upon attorney fees awards he has received in the past,[1] and is a figure used by his law firm in the "Angino and Lutz Power of Attorney." (Id., ¶¶10 and 14.)  Using this method, Mr. Angino submits

---

[1] The one example provided by Mr. Angino where he received a fees award set at an hourly rate of $750 was from 2009. (Doc. 12, Ex. A.)

that his insurance claim has a value of between $500,000-$1,000,000.  According to Mr. Angino this claim is "at least equal to the $750,000 verdict previously obtained" by Angino in a 1997 lawsuit, yet another reflection of how past success informs the plaintiff's view of his future earning capabilities.  (Id., ¶¶17-18.)

In contrast, Cincinnati has focused upon current, actual earnings from Mr. Angino's law practice to assess potential future lost earnings for this 75-year-old attorney who may be approaching the conclusion of his active professional life. Adopting this approach, which looks to the present to predict the future, the defendant arrives at a far lower valuation of this component of the Anginos' insurance claim.

With the litigation framed around this particular issue, the plaintiffs have filed a motion *in limine* which seeks a declaration that the method of loss calculation adopted by the defendant is invalid as a matter of law.  Upon consideration of this motion, and the defendant's response to that motion, we disagree.

Instead, we recognize that there are two concurrent themes to Pennsylvania law on this score, which can be aptly summarized as follows:  "The general rule is that profits derived from a business are not to be considered as earnings and cannot be admitted as a measure of loss of earning power, but where they are almost entirely the direct result of personal management and endeavor, they are an accurate measure of

earning capacity and admissible as such." <u>Bell v. Yellow Cab Co.</u>, 399 Pa. 332, 339, 160 A.2d 437, 441 (1960).  In our view, given the facts currently before the Court, the loss calculation method employed by Cincinnati is also a permissible method of calculating future earnings in this case "where [some evidence suggests that] a business is small and the income which produces it is due principally to the personal services and attention of the owner." <u>Serhan v. Besteder</u>, 347 Pa. Super. 11, 17, 500 A.2d 130, 133 (1985).  Since Mr. Angino, who has emphasized his own preeminent and seminal role in his legal practice, has described his business in terms which would permit an inference that the income which the law firm produces is due principally to his personal services and attention, we believe that each party should be permitted to provide its contrasting views regarding the proper method of calculation of this component of the plaintiff's losses, and the evidence supporting that calculation, at trial.  Therefore, the motion *in limine* will be denied.

## II.   <u>Discussion</u>

### A.   <u>Legal Guideposts–Motions *In Limine*</u>

This motion *in limine* calls upon the Court to determine as a matter of law a principal contested factual issue in this litigation, the proper calculation of Mr. Angino's future loss earnings.  We are asked to make this determination, as a matter of law, and wholly preclude the method of calculation employed by the defendant,

5

even though that method of calculation draws some support both from the facts, and from the guiding principles of Pennsylvania law.

Parties often invite courts to make pre-trial rulings on issues of relevance and admissibility through motions *in limine*.  The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted. . . .  Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage."  In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . .").  Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" and has warned that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper."  In re Paoli R. Yard PCB Litig., 916 F.2d at 859.  However, it is also well-settled that "[a] trial court is afforded substantial discretion when striking a . . . balance with respect to proffered evidence, and a trial judge's decision to admit or exclude evidence . . . may not be reversed unless it is arbitrary and irrational."  McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009).

This case aptly illustrates why caution is appropriate in this field. The parties'
competing submissions in this matter generally agree on the controlling legal tenets
which govern this element of damages calculation. Those legal tenets present two
contrasting approaches to loss calculation, differing approaches that are approved by
the Pennsylvania courts and depend upon the facts of each particular case. Thus:
"The general rule is that profits derived from a business are not to be considered as
earnings and cannot be admitted as a measure of loss of earning power, but where
they are almost entirely the direct result of personal management and endeavor, they
are an accurate measure of earning capacity and admissible as such." Bell v. Yellow
Cab Co., 399 Pa. 332, 339, 160 A.2d 437, 441 (1960). In fact, "[i]n many cases, the
appellate courts of this Commonwealth have held that where a business is small and
the income which produces it is due principally to the personal services and attention
of the owner, the net profits of the business may afford a reliable measure of the
owner's earnings." Serhan v. Besteder, 347 Pa. Super. 11, 17, 500 A.2d 130, 133
(1985). Indeed, courts and commentators have observed that reliance on current net
profits as one benchmark for assessing future lost earnings may be particularly fitting
for an attorney like Mr. Angino whose earnings are almost entirely a product of his
personal imagination, endeavor, industry and reputation. See also Ashcraft v. C. G.
Hussey & Co., 359 Pa. 129, 133, 58 A.2d 170, 173 (1948) ("Where, as here, profits

are almost entirely the direct result of personal endeavor, testimony regarding the loss of profits is admissible as a measure of earning capacity.") <u>See also</u>, Thomas W. Long, <u>Economic Impairment in Personal Injury Actions</u>, 30 S. TEX. L.REV. 397, 408–410 (1989) ("Self-employed individuals such as lawyers, painters, or doctors are best suited to recover special damages for a loss of earning capacity in a particular field by proof of lost profits".)

In sum, we conclude that the method of loss calculation employed by the defendant in this case draws support from both the facts of this case, and settled tenets of Pennsylvania law. Recognizing that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted," <u>In re Paoli R. Yard PCB Litig.</u>, 916 F.2d 829, 859 (3d Cir. 1990), we will, therefore, deny the plaintiff's motion *in limine*. Instead we will permit both parties to fully present their contrasting loss calculations and the factual basis for those calculations at trial, without prejudice to renewing any claims regarding the admissibility of this evidence in the context of a fully developed factual record.

Further, for the planning purposes of counsel, we note that we have been assigned to the trial of two cases in February, matters in which parties consented to our jurisdiction after protracted pretrial proceedings. Both of these cases significantly pre-date the instant lawsuit, and one of these cases has been set for what the parties

now report and project to be a protracted trial beginning on February 22, 2016, the same date initially set for the trial of this case.  In light of these developments, we would direct the parties as follows:

1.  First, in light of this ruling we request that the parties consult, and confer and notify the Court by **February 1, 2016**, regarding whether there is a mutual interest in mediation of this dispute.  If the parties report a mutual interest in mediation we will briefly suspend the trial schedule to permit that process to move forward.

2.  Second, in order to accommodate this other litigation, the pretrial conference in this case is rescheduled to **February 18, 2016**, at 10:00 a.m.  At that time, the parties should advise the Court regarding their availability for trial on the weeks of March 28, April 4 and April 11, 2016.

An appropriate order follows.

### III.  <u>ORDER</u>

Accordingly, for the foregoing reasons, the plaintiff's motion in *limine* (Doc. 12.) is DENIED, without prejudice to renewal of argument on these evidentiary issues at trial, in accordance with this memorandum.

IT IS FURTHER ORDERED that:

1.      First, in light of this ruling we request that the parties consult, and confer and notify the Court by **February 1, 2016**, regarding whether there is a mutual interest in mediation of this dispute.  If the parties report a mutual interest in mediation we will briefly suspend the trial schedule to permit that process to move forward.

2.      Second, in order to accommodate other litigation, the pretrial conference in this case is rescheduled to **February 18, 2016, at 10:00 a.m.**  At that time, the parties should advise the Court regarding their availability for trial on the weeks of March 28, April 4 and April 11, 2016.

So ordered this 21st day of January 2016.

                                        ***/s/ Martin C. Carlson***_____
                                        Martin C. Carlson
                                        United States Magistrate Judge