## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD ANGINO and ALICE ANGINO,** : | |
| : | Civil No. 1:15-CV-952 |
| **Plaintiffs** : | |
| : | |
| v. : | |
| : | **(Magistrate Judge Carlson)** |
| **THE CINCINNATI INSURANCE CO.,** : | |
| : | |
| **Defendant** : | |

## MEMORANDUM OPINION AND ORDER

### I.   Statement of Facts and of the Case

This is a diversity civil action brought by Richard and Alice Angino against the Cincinnati Insurance Company, the plaintiffs' uninsured and under-insured insurance policy carrier, seeking to recover from Cincinnati under this policy as a result of a November 2014 automobile accident in which the Anginos' vehicle was struck and demolished by a car driven by an under-insured motorist.

This case now comes before us on a motion *in limine* filed by the defendant. (Doc. 12.) This motion *in limine* seeks to bar actuarial evidence proffered by the plaintiff relating to his alleged damages in this action, and following on the heels of

a motion *in limine* filed by the plaintiff, which also sought to limit the defense's presentation of certain actuarial evidence.

In our view at bottom both of these motions seek a declaration as a matter of law prior to trial that the plaintiffs should prevail on one of the principal disputed issues in this case, the question of how to calculate any future lost earnings suffered by Mr. Angino, a 75-year old personal injury attorney who has enjoyed a lengthy and successful legal career. For the reasons set forth below, we conclude that this issue may not be resolved by the Court as a matter of law in advance of trial, but rather should be the subject of competing proof at trial.

The pertinent facts in this case can be simply stated: The plaintiff, Richard Angino, is an attorney in his 70s, who was the founding partner of his law firm, has been a preeminent personal injury plaintiff's counsel, and is self-described as the moving force behind this law firm for many years. Given Mr. Angino's description of his prominent and indispensable leadership role in this firm, it appears that the firm, which for the past year has employed only three attorneys and 8 staff, is largely sustained by the industry, energy, efforts, time, talents and reputation of Mr. Angino, who has explained that he: "was one of 13 Plaintiff attorneys throughout Pennsylvania to be recognized in the First Edition of Best Lawyers in America and perhaps the only one to still be practicing full time." (Doc. 12, ¶13.)

On November 30, 2014, Mr. Angino was the operator and Mrs. Angino a passenger in a motor vehicle which was struck from the rear by an under-insured motorist. (Id., ¶1.) As a result of this accident, Mr. Angino alleges that he "sustained severe neck, mid and low back injuries, which have required over the past 10 months medical care, treatment, medical bills, lost earnings, and an impairment of earning capacity, as well as general damages." (Id., ¶3.)

As described in the plaintiff's complaint, this lawsuit largely involves a dispute between the parties regarding how best to evaluate the Anginos' losses that may be recovered under this insurance policy. In particular, the parties dispute how best to evaluate the potential future lost earnings that Richard Angino can expect to recover as a result of the injuries he suffered in this November 2014 accident. As to this pivotal issue, relying upon competing tenets of Pennsylvania law, and presenting their own conflicting views of the evidence, the parties have each adopted contrasting methodologies for calculating this element of the insurance claim.

For his part, Mr. Angino's future earnings calculation looks to the past to predict the future. Specifically, Mr. Angino has "utilized the $750 figure to have an actuary calculate past and future income lost in determining earning capacity based upon his value as an attorney." (Id., ¶15.) According to Mr. Angino, this $750 hourly rate is a product of his past legal success, is based upon attorney fees awards

3

he has received in the past,[1] and is a figure used by his law firm in the "Angino and Lutz Power of Attorney." (Id., ¶¶10 and 14.) Using this method, Mr. Angino submits that his insurance claim has a value of between $500,000-$1,000,000. According to Mr. Angino this claim is "at least equal to the $750,000 verdict previously obtained" by Angino is a 1997 lawsuit, yet another reflection of how past success informs the plaintiff's view of his future earning capabilities. (Id., ¶¶17-18.)

In contrast, Cincinnati has focused upon current, actual earnings from Mr. Angino's law practice to assess potential future lost earnings for this 75year-old attorney who may be approaching the conclusion of his active professional life. Adopting this approach, which looks to the present to predict the future, the defendant arrives at a far lower valuation of this component of the Anginos' insurance claim.

With the litigation framed around this particular issue, each party has filed a motion *in limine* which seeks a declaration that the opposing party's method of loss calculation is invalid as a matter of law.

In both instances we disagree.

---

[1] The one example provided by Mr. Angino where he received a fees award set at an hourly rate of $750 was from 2009. (Doc. 12, Ex. A.)

Instead, we recognize that there are two concurrent themes to Pennsylvania law on this score, which can be aptly summarized as follows: "The general rule is that profits derived from a business are not to be considered as earnings and cannot be admitted as a measure of loss of earning power, but where they are almost entirely the direct result of personal management and endeavor, they are an accurate measure of earning capacity and admissible as such." Bell v. Yellow Cab Co., 399 Pa. 332, 339, 160 A.2d 437, 441 (1960). In our view, given the facts currently before the Court, the loss calculation method employed by Cincinnati is also a permissible method of calculating future earnings in this case "where [some evidence suggests that] a business is small and the income which produces it is due principally to the personal services and attention of the owner." Serhan v. Besteder, 347 Pa. Super. 11, 17, 500 A.2d 130, 133 (1985). Likewise, depending upon factual findings at trial, the loss calculation method adopted by Mr. Angino is also permissible. Therefore, we believe that each party should be permitted to provide its contrasting views regarding the proper method of calculation of this component of the plaintiff's losses, and the evidence supporting that calculation, at trial. Therefore, the defense motion *in limine* will be denied.

## III. <u>ORDER</u>

Accordingly, for the foregoing reasons, the defendant's motion in *limine* (Doc. 17.) is DENIED, without prejudice to renewal of argument on these evidentiary issues at trial, in accordance with this memorandum.

So ordered this 11th day of March 2016.

                                                    */s/ Martin C. Carlson*
                                                    Martin C. Carlson
                                                    United States Magistrate Judge