**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD ANGINO and ALICE** | : | |
| **ANGINO,** | : | **Civil No. 1:15-CV-952** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **THE CINCINNATI INSURANCE CO.,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

I.      **Statement of Facts and of the Case**

This case, which comes before us for consideration of a motion for new trial

filed by the plaintiffs, (Doc.65), is a civil action brought by Richard Angino, a

prominent Harrisburg attorney, and his wife, Alice Angino, against the Cincinnati

Insurance Company, the plaintiffs' uninsured and under-insured insurance policy

carrier. In this lawsuit the Anginos seek to recover from Cincinnati under this policy

as a result of a November 2014 automobile accident in which the Anginos' vehicle

was struck and demolished by a car driven by an under-insured motorist. Thus, Mr.

Angino is both the plaintiff, and plaintiff's counsel, in this case. As such, he is the

architect of his own case, has defined his claims and demands in this litigation, and

has in the course of the litigation occasionally adopted an erratic posture relating to

some of the legal issues in the lawsuit.

As to the lawsuit itself, the pertinent facts in this case can be simply stated: The plaintiff, Richard Angino, is an attorney in his 70s, who was the founding partner of his law firm and is self-described as the moving force behind this law firm for many years. Given Mr. Angino's description of his prominent and indispensable leadership role in this firm, the plaintiffs claimed that the firm, which for the past year has employed only three attorneys and 8 staff, was largely sustained by the industry, energy, efforts, time, talents and reputation of Mr. Angino, who has explained that he: "was one of 13 Plaintiff attorneys throughout Pennsylvania to be recognized in the First Edition of Best Lawyers in America and perhaps the only one to still be practicing full time." (Doc. 12, ¶13.)

On November 30, 2014, Mr. Angino was the operator and Mrs. Angino a passenger in a motor vehicle which was struck from the rear by an under-insured motorist. (Id., ¶1.)  As a result of this accident, Mr. Angino alleges that he "sustained severe neck, mid and low back injuries, which have required over the past 10 months medical care, treatment, medical bills, lost earnings, and an impairment of earning capacity, as well as general damages." (Id., ¶3.)

As this case proceeded to trial, the issues before the jury were framed in the following fashion: The parties conceded the negligence of the tortfeasor, the under-

2

insured motorist. With one very narrow exception, however, the parties hotly contested the issue of factual causation, and the related question of the degree of damages which could be attributed to this accident. On these two issues the parties' positions stood, and remain, in sharp contrast.

For his part, Mr. Angino insisted that he suffered on-going permanent disabling injuries as a result of this accident, injuries which would impair his earning capacity for the rest of his life. The Anginos' contentions that these injuries were permanent, enduring and undermined his earning capacity for the rest of his life were the factual lynchpins of the case they presented to the jury, and formed the basis for their demand of as much as $1,000,000 in damages. Cincinnati Insurance Company strenuously disputed this factual assertion that the November 2014 accident caused permanent injuries to the plaintiffs, an assertion which rested at the heart of the Anginos' case. While Cincinnati conceded that the Anginos would have suffered some initial minor back strains caused by the accident, the defendant amassed substantial evidence which disputed the plaintiffs' primary claim at trial–their allegation that they suffered permanent injuries as a result of this accident.

In fact, the greater weight of the evidence presented at trial supported the conclusion that the injuries suffered by the Anginos in this accident were fleeting, temporary, and not permanent in nature. This was the express conclusion of the

defendant's expert witness, Dr. Fayazzi, who provided lengthy and detailed testimony which persuasively attributed the plaintiffs' complaints of permanent injury, not to the November 2014 accident, but to the natural aging process.  The conclusion reached by Dr. Fayazzi were buttressed by his own examination of Mr. Angino, and by Richard Angino's medical records, which corroborated the fact that many of his lumbar complaints were simply a product of advancing years. Furthermore, Mr. Angino's treatment and physical therapy history were inconsistent with a claim of permanent disabling pain caused by this accident.

For example, Mr. Angino's treatment history was not entirely consistent with a person experiencing on-going disabling pain. Thus, Mr. Angino testified he voluntarily discontinued treatments in February 2015, at the same time he settled his claim against the tortfeasor's insurer. Mr. Angino then engaged in a 7-month treatment  hiatus before he sought out a  second orthopedist, John Grandrimo M.D., on July 28, 2015. Dr. Grandrimo never testified at trial, and provided a series of equivocal reports in this litigation, but medical records of this physician indicated that there was never any objective finding of spasm to Mr. Angino's back, a condition which the plaintiff claimed was caused by the accident and was permanently disabling.

Likewise the physical therapy evidence presented by Mr. Angino contradicted

a claim of permanent, on-going disability. At trial, Mr. Angino presented a physical

therapist, Robert Lontz, as a witness on his behalf. Mr. Lontz provided physical

therapy to the plaintiff in the summer of 2015, some eight months after the accident.

On balance, Mr. Lontz's testimony provided scant support for a claim of permanent

disability, and actually seemed to contradict that claim on several scores. Thus, Mr.

Lontz indicated that this physical therapy focused primarily upon Mr. Angino's

thoracic spine, and indicated that Mr. Angino's neck and low back did not require

significant treatment. Mr. Lontz also testified in a fashion consistent with the

defendant's medical expert, Dr. Fayazzi, stating that  he did not expect his physical

therapy to provide any improvement to the limited range of motion Mr. Angino had

in his neck, because of Mr. Angino's kyphosis, an observation that was essentially

consistent with, and corroborative of, the testimony of the defense medical expert Dr.

Fayyazi, who attributed Mr. Angino's complaints of upper back pain secondary to his

degeneratively-induced kyphosis. Further, Mr. Angino's self-reported statements to

his physical therapist belied a claim of permanent disability since Mr. Lontz testified

that Mr. Angino reported that he continued to work full time and full duty. Mr. Lontz

also described and interpreted the results of a survey completed by Mr. Angino, an

Oswestry Impairment survey. According to Mr. Lontz, Mr. Angino's self-prepared

Oswestry Impairment survey rating was 8%, a degree of reported impairment which

was, Mr. Lontz's words, "negligible," and statistically no different than a 0% rating.

This sharply defined factual dispute regarding whether this accident caused any permanent injuries to the plaintiff, in turn, defined another closely contested factual issue in this lawsuit: the proper measure of damages claimed by the plaintiffs. On this score as well the parties had clearly divergent views. For his part, Mr. Angino's future earnings calculation looked to the past to predict the future. Specifically, Mr. Angino "utilized [a] $750 figure to have an actuary calculate past and future income lost in determining earning capacity based upon his value as an attorney." (Id., ¶15.) According to Mr. Angino, this $750 hourly rate was a product of his past legal success, was based upon attorney fees awards he has received in the past, and was a figure used by his law firm in the "Angino and Lutz Power of Attorney." (Id., ¶¶10 and 14.)  Using this method, Mr. Angino submitted that his insurance claim had a future lost earnings value of between $500,000-$1,000,000. According to Mr. Angino this claim was "at least equal to the $750,000 verdict previously obtained" by Angino is a 1997 lawsuit, yet another reflection of how past success informed the plaintiff's view of his future earning capabilities. (Id., ¶¶17-18.)

Integral to this loss calculation was the view, repeatedly expressed by Mr. Angino throughout the trial, that his skill, acumen, industry, energy and personal genius were unique and constituted key components to the financial success of his law

firm. The emphasis which Mr. Angino placed at trial upon these personal attributes as key elements of his firm's professional success cannot be overstated. At trial, Mr. Angino testified at great length about his own personal successes, describing events in his legal practice which spanned four decades, and included extensive discussions of the successes he enjoyed in his practice in the decades that preceded this November 2014 accident. Moreover, in his closing argument Mr. Angino urged the jury to find that his personal gifts as an attorney were so great that they commanded damages calculated at an hourly rate of more than $700.

Recognizing that Mr. Angino's damages calculations were based in large measure upon his own assessment of the substantial value of his legal services, and the critical role that his skills placed in the success of his legal practice, Cincinnati focused upon current, actual earnings from Mr. Angino's law practice to assess potential future lost earnings for this 75 year old attorney who was approaching the conclusion of his active professional life. Adopting this approach, which looked at Mr. Angino's law firm's actual reported earnings to predict his future income, the defendant arrived at a far lower valuation of the future lost earnings damages component of the Anginos' insurance claim.

With the litigation framed around these two disputed issues, the case proceeded to trial in April of 2016. In advance of trial we provided the parties proposed jury

instructions for their consideration.  Mr. Angino initially lodged some objections to aspects of these instructions, which were revised by the court, acknowledging that "Appropriate instructions should reference . . . factual cause *as to some injuries*." (Doc. 45)(emphasis added.) This concession by plaintiff's counsel that appropriate instructions should reference factual causation issues as to some injuries aptly reflected the state of the evidence, where the defendant conceded that the Anginos suffered some temporary back strain injury caused by the accident, while actively disputing the plaintiffs' claims that permanent injuries were caused by this accident. Nonetheless, as the trial drew to a close, Mr. Angino adopted a different view on the question of causation, one which was unsupported by Pennsylvania case law, and conflicted with his prior acknowledgment that "Appropriate instructions should reference . . . factual cause as to some injuries." (Id.)

Citing Pennsylvania tort cases, Mr. Angino asserted that Cincinnati's concession that he had suffered a brief back strain as a result of this accident now wholly precluded the defendant from contesting factual causation as to any of the plaintiffs' $1,000,000 permanent personal injury claims. While Mr. Angino alleged that he was advancing this argument based upon Pennsylvania case law, the legal authority cited by the plaintiff plainly did not support the proposition that a concession of causation as to any narrow class of injury in a personal injury case automatically

8

acts as a matter of law to bar a defendant from contesting causation as to any other categories of personal injury. Pennsylvania case law simply does not support this categorical approach urged upon us by the plaintiff. Rather, the cases cited by Mr. Angino stood for a very different proposition, one which is grounded in case law and commonsense. These cases do not require a defendant to choose between contesting causation as to all of the plaintiff's injuries or conceding causation across the board. Rather, Pennsylvania case law acknowledges that defendants may contest causation, in part, but provides that a plaintiff may receive an instruction that causation is conceded as to certain specific classes of injuries where causation on that category of injury is conceded. Thus, Pennsylvania law does not require a wholesale concession of causation as to all damage claims where causation was conceded on some narrow specific claim. Rather, the court should instruct the jury to accept causation only with respect to those specific claims where causation is conceded by the defense at trial. See e.g., Coopey v. City of Wilkes-Barre, 2015 WL 5970549 (Pa. Super. 2015)(concession of causation by defense as to some injuries permits damages trial as to only those injuries where causation conceded); Bostanic v. Barker-Barto, 936 A.2d 1084 (Pa. Super. 2007)(same); Elliott v. Ionta, 869 A.2d 502 (Pa. Super. 2005)(same); Smith v. Putter, 832 A.2d 1094 (Pa. Super. 2003)(same).

We recognized that Mr. Angino's proposed instruction was inconsistent with

this Pennsylvania case law and would have effectively directed a verdict on causation with respect to his permanent disability claim despite the fact that Cincinnati actively disputed causation as to those injuries, and the greater weight of the evidence supported a conclusion that the accident did not cause a permanent injury. Therefore, we declined Mr. Angino's invitation to embrace this legally unsupported and factually unwarranted instruction. Instead, we tendered to the parties revised jury instructions and verdict forms which would have conformed with the evidence, and the law. These revised instructions and verdict forms would have advised the jury that factual causation was undisputed with respect to the initial back strain suffered by the plaintiffs but that causation for the Anginos' permanent injuries was contested. The instructions and verdict form therefore would have allowed the jury to assess damages on the Anginos' temporary back strain claim, but would have submitted the question of causation for permanent injuries to the jury for its determination.

The plaintiffs strenuously objected to this proposed revised instruction, insisting that if the court did not direct a verdict in favor of the plaintiffs on all aspects of causation then the court should simply provide a general factual causation instruction to the jury. This request by Mr. Angino clearly reflected a tactical judgment on

counsel's part,[1] and we acquiesced in Mr. Angino's request that we provide a general factual causation instruction to the jury since we were unwilling to grant his legally and factually inappropriate request to direct a verdict in his favor on all aspects of causation.

The case then proceeded to the jury with the plaintiffs focusing exclusively upon their assertion that the accident caused permanent disabling injuries that commanded damages for the rest of Mr. Angino's work life calculated at an hourly rate of more than $700. With the issues framed in this fashion, and with Mr. Angino explicitly urging the jury to find that this accident caused permanent injuries to the plaintiffs, the case was submitted to the jury. The jury then returned a verdict for the defendant, and expressly concluded that the Anginos had not proven that "the

---

[1]These tactical considerations which doubtless influenced Mr. Angino's insistence that we either direct a verdict on all causation issues in his favor, or submit a general causation instructions included that fact that the plaintiffs had presented the case as one which solely involved a permanent disabling injury. The instruction proffered by the court, while legally correct and factually warranted, may have been perceived by Angino as inconsistent with the theory of the case he was presenting to the jury. Moreover, Mr. Angino, a seasoned personal injury attorney, doubtless understood that the value of the temporary back strain claim, the only claim as to which causation was conceded, was nominal and would likely be offset by the $30,000 recovery he had obtained directly from the tortfeasor's insurance carrier at a prior stage of these proceedings. While these tactical considerations may have influenced the election made by Mr. Angino, they cannot be seen as factors which justified an inappropriate jury instruction directing a verdict on factually contested matters.

negligence of the tortfeasor was a factual cause of the harms complained of by the plaintiffs," (Doc. 59), harms which had been presented to the jury by the plaintiffs as permanent injuries. Thus, the jury's verdict can only be read as a complete repudiation of the claim urged upon them by the plaintiffs, a claim of permanent disabling injury.

This motion for new trial then followed. In this motion, Mr. Angino renews his argument that the court should have directed a verdict in his favor on all elements of factual causation simply because the defendant conceded factual causation as to a specific narrow injury, a temporary back strain. Mr. Angino also argues that the court erred in allowing the presentation of evidence concerning Mr. Angino's law firm's actual reported income as a measure of future lost income damages. This motion is fully briefed by the parties, and is therefore ripe for resolution.

For the reasons set forth below, the motion will be granted in part, and denied in part, as follows: The motion is denied in all respects except one: If the plaintiffs now choose to reverse the position taken at trial and elect within the next 30 days to proceed with a damages trial limited to the one narrow claim where factual causation was conceded, namely, the claim that the plaintiffs experienced temproary back strains caused by the accident, the court will permit a new trial on that claim alone.

## II.    **Discussion**

## A.   Motion for New Trial –Standard of Review

Rule 59 of the Federal Rules of Civil Procedure, which concerns the power of a court to grant a new trial or to alter or amend a judgment,  provides, in pertinent part, as follows:

> (a)   In General.
>
>> (1)   Grounds for New Trial.  The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
>>
>>> (A)   after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .
>>> ***
>
> (e)   Motion to Alter or Amend a Judgment.  A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Fed. R. Civ. P. 59.  Federal courts are hesitant to order new trials, and the Third Circuit has explained that "the district court's power to grant a new trial motion is limited to those circumstances where a miscarriage of justice would result if the verdict were to stand." Olefins Trading, Inc., Han Yang Chem. Corp., 9 F.3d 282, 290 (3d Cir. 1993) (internal quotation marks omitted).  As one leading commentator has emphasized, a motion for a new trial must "'state with particularity the grounds for seeking the order," and a motion will be found "defective if it states no grounds

whatever, or if the statement of grounds is purely pro forma." 11 Federal Practice & Procedure § 2811 (3d ed.) (quoting Parts and Elec. Motors, Inc. v. Sterling Elec., Inc., 826 F.2d 712 (7th Cir. 1987)). The decision of whether to grant a new trial is left to the sound discretion of the trial judge. Todd v. Luzerne County Children & Youth Servs, No. 3:04-cv-2637, 2011 WL 841429, at *2 (M.D. Pa. Mar. 8, 2011). Some instances where courts have granted motions for new trials include where: (1) there has been a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury. Maylie v. Nat'l R.R. Passenger Corp., 791 F. Supp. 477, 480 (E.D. Pa. 1992).

## B. With One Narrow Exception, The Plaintiffs' Motion For New Trial Will Be Denied

Judged against these exacting guideposts, we find that, with one narrow exception, the plaintiffs' motion for new trial should be denied. At the outset, in this motion the plaintiffs seek a new trial based upon an evidentiary ruling made by the court. That ruling permitted Cincinnati Insurance to present evidence based upon the actual reported earnings of the Angino law firm to rebut the plaintiffs' permanent injury, future lost earnings damage calculation. We permitted this evidence at trial, given that Mr. Angino testified at trial that his skill, acumen, industry, and talents

were unique and constituted key components to the financial success of his law firm. Indeed, in closing Mr. Angino urged the jury to find that his personal talents as an attorney were so great that they commanded future lost earnings damages calculated at an hourly rate of more than $700.

Given this testimony and evidence proffered by the plaintiffs, which emphasized that the income produced by the law firm was due principally to the personal services and attention of Mr. Angino, we concluded that the earnings information offered by the defendant was relevant and probative evidence. On this score, we recognized that there are two concurrent themes to Pennsylvania law on this legal issue, which can be aptly summarized as follows: "The general rule is that profits derived from a business are not to be considered as earnings and cannot be admitted as a measure of loss of earning power, but where they are almost entirely the direct result of personal management and endeavor, they are an accurate measure of earning capacity and admissible as such." Bell v. Yellow Cab Co., 399 Pa. 332, 339, 160 A.2d 437, 441 (1960). In our view, given the facts presented at trial, which emphasized what plaintiffs alleged to be Mr. Angino's pivotal role in the success of the law firm, the loss calculation method employed by Cincinnati was a permissible method of calculating future earnings in this case since the plaintiffs' own evidence revealed that the Angino firm was a business that "is small and the income which produces it is due

principally to the personal services and attention of the owner." <u>Serhan v. Besteder</u>, 347 Pa. Super. 11, 17, 500 A.2d 130, 133 (1985). In short, since the facts presented at trial by Mr. Angino supported the loss calculation methodology employed by Cincinnati, the plaintiffs cannot be heard to complain that this loss calculation evidence compels a new trial.

In any event, we note that Mr. Angino's argument also misses a crucial point. A future earnings calculation method only becomes relevant once a jury has decided that the plaintiff has proven factual causation regarding injuries which led to future lost earnings; that is, that the plaintiff suffered an enduring injury caused by the accident which gives rise to future earnings losses. In this case, the jury expressly concluded that Mr. Angino had not carried his burden of proof on this question of causation, as it related to the primary claim presented to them by the plaintiffs, a permanent injury, future lost earnings claim. This adverse finding concerning causation and liability renders any issues relating to the calculation of future lost earnings damages entirely moot. In fact, on this score we are cautioned to refrain from ordering a new trial as to damages alone, the relief sought by the plaintiffs, since that damages question is closely intertwined with liability issues previously determined by the jury. Thus, it is well-settled that "a new trial limited solely to damages is improper where 'the question of damages ... is so interwoven with that of liability that

the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.' " Pryer v. C.O. 3 Slavic, 251 F.3d 448, 455 (3d Cir. 2001). Here, Angino invites us to order a new trial on future lost earnings damages based upon what he claims were erroneous rulings relating to the introduction evidence of future lost earnings damages. However, the Anginos advance this argument against the backdrop of a verdict which rejected the notion that the Mr. Angino sustained any injury which resulted in future lost earnings damages. Since this course is legally improper, we will decline this invitation.

We also reject any suggestion that the jury's verdict in favor of the defense on the plaintiffs' claim of permanent injury and future lost earnings caused by this accident–which was the primary claim presented by the plaintiffs at trial–was contrary to the weight of the evidence.  Such a motion must meet the most exacting of standards and "we [are] caution[ed] that the district court ought only to grant a new trial on this basis where 'a miscarriage of justice would result if the verdict were to stand.' Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352 (3d Cir.1991)." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992).

Here the jury's verdict rejecting the plaintiffs' claim that they experienced permanent disabling injuries caused by this accident cannot be viewed as a

miscarriage of justice. Quite the contrary, that verdict reflected a rational assessment

of the proof, and acknowledged the greater weight of the evidence presented at trial.

That evidence revealed that  the defendant's expert witness, Dr. Fayazzi, provided

lengthy, detailed and persuasive testimony which attributed the plaintiffs' complaints

of permanent injury not to the November 2014 accident, but to the natural aging

process.   The conclusion reached by Dr. Fayazzi was buttressed by his own

examination of Mr. Angino; by Richard Angino's medical records; and by evidence

presented by Mr. Lontz, the physical therapist called by the plaintiff as a witness at

trial. Mr. Lontz testified that Mr. Angino reported that he continued to work full time

and full duty, and described the results of a survey completed by Mr. Angino, an

Oswestry Impairment survey. According to Mr. Lontz, Mr. Angino's self-prepared

Oswestry Impairment survey rating was 8%, a degree of reported impairment which

was, Mr. Lontz's words, "negligible," and statistically no different than a 0% rating.

Given this evidence a jury could reasonably conclude that the plaintiffs failed to carry

their burden of proof on claims that Mr. Angino suffered on-going and disabling

injuries caused by this accident. The jury's verdict  on this permanent injury, future

lost earnings claim, being consistent with the evidence, therefore may not now be set

aside by the court.

Finally, in this post-trial motion the plaintiffs renew and reprise their argument

that they were, in essence, entitled to a directed verdict in their favor on the issue of causation because the defense conceded that certain temporary back strain injuries were caused by this accident.  This sweeping argument fails for several reasons.

First, this argument conflates the claims and defenses in this case and erroneously suggests that the defense conceded causation as to all claims submitted to the jury. The defendant emphatically did not concede causation as to any claims of on-going injury which the plaintiffs attributed to this accident. Quite the contrary, they contested that issue vigorously and in a manner which the jury ultimate found persuasive.

Second, this broad and sweeping claim fails because it misstates the case law upon which Angino relied. Pennsylvania case law simply does not support the proposition that a concession of causation as to any narrow class of injury in a personal injury case automatically acts as a matter of law to bar a defendant from contesting causation as to all other categories of personal injury. Pennsylvania case law instead stands for a very different proposition, one which is grounded both in case law and commonsense. Pennsylvania case law acknowledges that defendants may contest causation, in part, but provides that a plaintiff may receive an instruction that causation is conceded as to certain classes of injuries. Thus, the remedy provided for by Pennsylvania law is not a wholesale concession of causation as to all damage

19

claims where causation was conceded on some narrow specific claim. Rather, the court should instruct the jury to accept causation only with respect to those specific claims where causation is conceded by the defense at trial. <u>See e.g.</u>, <u>Coopey v. City of Wilkes-Barre</u>, 2015 WL 5970549 (Pa. Super. 2015)(concession of causation by defense as to some injuries permits damages trial as to only those injuries where causation conceded); <u>Bostanic v. Barker-Barto</u>, 936 A.2d 1084 (Pa. Super. 2007)(same); <u>Elliott v. Ionta</u>, 869 A.2d 502 (Pa. Super. 2005)(same); <u>Smith v. Putter</u>, 832 A.2d 1094 (Pa. Super. 2003)(same).

At trial this is precisely the form of instruction we offered to the parties, but Mr. Angino adamantly objected to adopting this approach. This objection was particularly puzzling since Mr. Angino's own pre-trial submissions had agreed "Appropriate instructions should reference . . . factual cause *as to some injuries*." (Doc. 45)(emphasis added.) Instead, Mr. Angino insisted that if we were unwilling to, in effect, direct a verdict on the question of causation as to all claims in a case where causation was hotly disputed as to many of the plaintiffs' claimed injuries, then we should simply give a general factual causation instruction. By proffering an erroneous causation instruction to the court which essentially directed a verdict on all claims; then objecting to the more legally and factually appropriate instruction which we tendered to the parties; and instead voicing a preference that the jury simply receive

a general instruction on factual causation, we believe that Mr. Angino waived any right to pursue post-trial claims relating to this jury instruction, except for claims grounded upon allegations of plain error, "a form of discretionary review that we have exercised sparingly and only to correct a 'fundamental' error that would 'result in manifest injustice.' " Simmons v. City of Philadelphia, 947 F.2d 1042, 1078 (3d Cir. 1991).

Here, we find that the result of this trial did not yield plain error, a fundamental error which resulted in manifest injustice, with regard to the Anginos' sweeping claims of enduring injuries which resulted in future lost earnings of as much as $1,000,000.  Mr. Angino made a tactical election at trial to present this case to the jury as a claim grounded in allegations that he suffered as much a $1,000,000 in damages due to permanent, on-going injuries caused by this accident. This legal claim was factually infirm, and the jury properly rejected this contention. In fact, granting Mr. Angino the relief he seeks in this motion, which is a re-trial of all his claims, including his permanent disability and future lost earnings claims, with the court stipulating that liability has been established and limiting the trial to damages alone, would result in a manifest injustice. It would completely discount and ignore the jury's verdict, a verdict supported by ample evidence, and a verdict which found against the plaintiffs on their principal claim, a claim of future lost income due to permanent injuries

caused by this accident, based upon a conclusion that the plaintiffs had failed to prove that the accident caused these permanent injuries. Given the "respect that is properly accorded to a jury verdict in our system of jurisprudence,"considerations of *res judicata* and the preeminence of jury verdicts compels us to reject any suggestion by the plaintiffs that the jury's verdict rejecting these claims should now be lightly disregarded. Roebuck v. Drexel Univ., 852 F.2d 715, 737 (3d Cir. 1988). Therefore, we will not entertain this invitation to convert the plaintiffs' unsuccessful trial of liability issues into a re-trial limited to damage calculations on claims where no liability was found by the jury.

## III.    Conclusion

This conclusion, however, brings us back to the basic legal proposition, grounded in Pennsylvania case law, which we proposed, but the plaintiffs rejected, at trial. Pennsylvania case law acknowledges that defendants may contest causation, in part, but provides that a plaintiff may receive an instruction that causation is conceded as to certain classes of injuries. See e.g., Coopey v. City of Wilkes-Barre, 2015 WL 5970549 (Pa. Super. 2015)(concession of causation by defense as to some injuries permits damages trial as to only those injuries where causation conceded); Bostanic v. Barker-Barto, 936 A.2d 1084 (Pa. Super. 2007)(same); Elliott v. Ionta, 869 A.2d 502 (Pa. Super. 2005)(same); Smith v. Putter, 832 A.2d 1094 (Pa. Super. 2003)(same).

While the plaintiffs denied this simple proposition at trial, and appear to continue to reject this settled legal tenet in their post-trial motion, we believe it is fitting to direct their attention to this legal issue once again and provide them with a final opportunity to reconsider what the jury's verdict revealed to be a thoroughly ill-conceived tactical decision at trial. Therefore, acting out of an abundance of caution in the exercise of our discretion we would grant the plaintiffs a very limited form of post-trial relief: If the plaintiffs now choose to reverse the position taken at trial and elect within the next 30 days to agree to proceed with a damages trial strictly limited to the one narrow claim where factual causation was conceded, namely, the claim that the plaintiffs experienced temporary back strains caused by the accident, the court will permit a new trial on that claim alone.[2] An appropriate order follows.

So ordered this 4th day of November, 2016.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

---

[2] Of course in making this election the plaintiffs should also take into account the fact that any verdict that they might achieve on this narrow claim, the sole claim which arguably survives in this case, should be molded and be offset by the $30,000 recovery the Anginos had obtained directly from the tortfeasor's insurance carrier at a prior stage of these proceedings.